886 So.2d 426 (2004)
John F. SHEILS, P.E., Appellant,
v.
FLORIDA ENGINEERS MANAGEMENT CORPORATION, Appellee.
No. 4D03-4393.
District Court of Appeal of Florida, Fourth District.
November 17, 2004.
Alexander D. Varkas, Jr. and Robert A. Sweetapple of Sweetapple, Broeker, Varkas & Feltman, Boca Raton, for appellant.
Douglas D. Sunshine, Tallahassee, for appellee.
GROSS, J.
John F. Sheils appeals the decision rendered by the State of Florida, Board of Professional Engineers, concluding that he committed professional misconduct. The Board's construction of the applicable statute is consistent with legislative intent. The findings of fact adopted by the Board are supported by competent substantial evidence in the record. Therefore, we affirm.
On July 23, 2002, the Florida Engineers Management Corporation (FEMC) filed an administrative complaint against John F. Sheils, alleging that Sheils had committed *427 professional misconduct in a letter written on April 12, 2001, following his inspection of a residence, in violation of section 471.033(g), Florida Statutes (2002), and Rule 61G15-19.001(6)(b) of the Florida Administrative Code.
A formal hearing was held before an administrative law judge (ALJ) on April 14, 2003.
The ALJ's findings of fact detailed the history of the residence about which Sheils prepared his report. In 1998, Phil and Kate Kribbs hired Al Pestana to replace a roof on their Lake Worth home. Pestana installed a new shingle roof over the pre-existing shake roof and the Palm Beach County Building Inspector issued a Certificate of Completion.
After a dispute arose over the quality of Pestana's work, the Kribbses hired a roofing consultant who opined that the roof work had serious defects.
Pestana hired appellant to examine the roof and issue a report. Appellant conducted a physical examination of the visible portions of the interior and exterior of the roof. Appellant then sent the April 12, 2001 inspection report/letter to Pestana that is the basis for the finding of professional misconduct.
The ALJ focused on the contents of the letter and appellant's inspection:
The report states that the roof would withstand winds of 70 miles per hour and a "major storm." As [the appellant] knew at the time, the applicable design wind speed is 100 miles per hour over a specified interval. At the hearing, [the appellant] acknowledged, as he did in the report, that he mentioned 70 miles per hour because this is the maximum wind speed that shingles must withstand before detaching from the sheathing.
However, the perils of detached shingles and a detached roof are entirely different in gravity. The issue of concern to the Building Department and the Kribbses was the peril of an inadequately attached roof detaching from the house during the design storm event  a far more dangerous contingency than detached shingles.
[The appellant's] references to "major storms" and 70 miles per hour, in the absence of any mention of the design storm and whether the roof meets this more demanding standard, constitutes a deliberate attempt to mislead the Kribbses and possibly the Building Department concerning the adequacy of the means by which Mr. Pestana had attached the roof to the Kribbs' house. This deliberate attempt to mislead constitutes misconduct in engineering.
The ALJ concluded that appellant had committed professional misconduct.
[FEMC] established by clear and convincing evidence that [appellant's] inspection report is inconsistent with and contradictory to the initial statements of inadequacy made in the same report. Additionally, [FEMC] established that [appellant's] report does not directly address the structural integrity of the roof to the approved specifications or whether the sheathing meets the minimum requirements of the applicable code. [Appellant's] report is further misleading with regards to [appellant's] irrelevant reference to the shingles allowable wind load of 70-mph and his attempt to equate compliance to the code requirements by stating that the roof deck surpasses the alleged 70- mph requirement. Additionally, [appellant's] use of the vague and imprecise criteria of a "major storm" in his misapplication of the estimated 8,000 nails through the plywood, combined with an uncalculated number of nails that penetrated the trusses and slats, to reach the unfounded conclusion *428 that the roof deck "could" be held down is also misleading. The evidence further establishes that the Building Department was fallaciously [misled] by [appellant's] report in that it took no further action to withdraw the Certificate of Completion as a result of [appellant's] fallacious conclusion that the roof was adequate and upon [appellant's] confirmation of his conclusion to Mr. Sherpitis and the Building Department.
Concluding that the ALJ's findings of fact were supported by substantial, competent evidence, the Board's Final Order adopted the ALJ's findings of fact and conclusions of law. The Board followed the ALJ's recommended penalty of a reprimand, an administrative fine of $1,000, two years probation, and costs. Additionally, the Board required appellant to take an approved course in professionalism and ethics.
Appellant challenges the Board's conclusion that he committed professional misconduct in the inspection report/letter.
Under section 120.68(7)(b), Florida Statutes (2003), this court cannot substitute its judgment for that of the agency regarding the weight of the evidence on any disputed finding of fact. "While an agency may reject conclusions of law without limitation, neither an administrative agency nor a reviewing court may reject an administrative hearing officer's findings of fact, as long as those findings are supported by competent, substantial evidence in the record." Szniatkiewicz v. Unemployment Appeals Comm'n, 864 So.2d 498, 502 (Fla. 4th DCA 2004).
Section 471.033(1)(g) states that disciplinary action may be taken against an engineer for "[e]ngaging in fraud or deceit, negligence, incompetence, or misconduct, in the practice of engineering." In turn, Rule 61G15-19.001(6)(b) of the Florida Administrative Code defines "misconduct" in the practice of engineering to include being "misleading ... in any professional report" or "omitting relevant and pertinent information from such report ... when the result of such omission would or reasonably could lead to a fallacious conclusion on the part of the client, the employer, or the general public."
FEMC presented the expert testimony of Joseph Berryman, who opined that the appellant's discussion of the 70 miles per hour speed approval for shingles was irrelevant to the purpose of the inspection, as the value to be given to the shingles was unrelated to wind load requirements for attaching the sheathing. Berryman testified that there is a 100 miles per hour wind load pursuant to the 1994 Standard Building Code, which rendered meaningless the letter's mention of the 70 miles per hour figure for shingles.
The expert also indicated that the report's discussion of the roof withstanding a "major storm" was misleading because, "[a] major storm could be any type of storm. It can be any type of  any  it's unquantified. The code quantifies wind speeds."
The expert testified that the report, viewed in its entirety, was misleading, as the conclusion that the roof was adequate was inconsistent with findings in earlier parts of the letter: "My opinion is to the  this report being misleading, it could be used to basically draw any conclusion that the reader may wish to draw. Now one of two, it either  it's not an acceptable roof and does not meet the specifications as would be expected, or that it is an acceptable roof and it would hold down the deck in a major storm." Such evidence, accepted by the ALJ, is sufficient to support the finding of professional misconduct.
*429 Appellant argues at length that FEMC failed to prove that he engaged in any deceit or fraudulent behavior regarding the issuance of the letter. However, professional misconduct is not only synonymous with fraud and deceit. The rule provides that misconduct may occur if the engineer is "untruthful, deceptive, or misleading in any professional report." Fla. Admin. Code R. 61G15-19.001(6)(b) (emphasis added). The ALJ focused on the misleading nature of the report, and not on whether appellant was guilty of deceit, fraud, or deception.
Appellant forcefully contends that the homeowner, the engineer hired by the homeowner, and the Building Department did not agree with his findings, such that no one was misled by his conduct. The ALJ found that the appellant attempted to mislead, not that the appellant in fact misled anyone. A finding of professional misconduct does not require that an engineer succeed in misleading a third party.
Finally, appellant argues that our review of the letter should lead us to conclude that at most, the letter was "vague and contradictory." However, the law requires this court to defer to the Board's application of the statute and rule regarding professional misconduct, which impose high standards of professionalism upon engineers. See, e.g., Pub. Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987, 989 (Fla.1985).
AFFIRMED.
TAYLOR and HAZOURI, JJ., concur.