GRIFFIN, J.
Robert C. Kany, P.E. [“Kany”], appeals the Florida Board of Professional Engineers’ [“Board”] order revoking his license to practice engineering. Revocation was grounded on a determination that Kany had violated section 471.033(l)(j), Florida Statutes, by affixing or permitting to be affixed his seal, name, or signature to final drawings that were not prepared by him or under his responsible supervision, direction, or control[1] and section 471.033(l)(a), Florida Statutes, by aiding and assisting an unlicensed person to practice engineering and for professional negligence.
The operative facts were essentially undisputed. Robert Thomas [“Thomas”], a draftsman, operated a business pursuant to which he contracted with homeowners to draft plans to improve two existing residential properties, one located on 8245 Curry Ford Road and the other at 2008 Corena Drive. Both projects included some engineering. Thomas is not a licensed engineer, however, so he brought the drawings he had prepared to Kany, a licensed professional engineer since 1940.[2] Kany reviewed Thomas’ drawings, made comments and corrections, and checked to make sure that the plans complied with code. He then signed and sealed the Curry Ford plans on about February 12, 2004, and signed and sealed the Corena Drive plans sometime between April 26, 2002 and July 8, 2003. This is the conduct that is the crux of this appeal. The Board contends that this conduct warrants revocation of his engineering license because the plans he sealed were not prepared under Kany’s “responsible supervision, direction or control.”
This matter was heard by the Division of Administrative Hearings on January 13, 2006. Each side presented witnesses. Based on the evidence presented at this hearing, the Administrative Law Judge [“ALJ”] issued a recommended order that included the following findings:
11. While one small deficiency exists to the structural design of Joint Exhibit 1, “Renovations to Existing Facilities 8245 Curry Ford Road, Orlando,” there was no threat to public safety.
12. There are myriad structural engineering deficiencies in Joint Exhibit 2, “2008 Corená Drive,” which are the sealed plans for the residence at that address. The deficiencies may be the result of the fact that the plans were incomplete due to the owners’ failure to decide on a cathedral or closed ceiling. If the plans were preliminary, [Kany] should not have sealed them.
13. The plans depicted in Joint Exhibit 2, “2008 Corena Drive,” do not meet minimum engineering standards; the engineer of record, Respondent, was negligent in sealing these plans.
*950 The ALJ concluded that the Florida Engineers Management Corporation [“FEMC”][3] had proven only count six of its complaint, which was that Kany had been negligent in sealing the Corena Drive plans. In rejecting the other counts, the ALJ wrote:
14. It is acceptable practice in the engineering community for an engineer to work with a designer who drafts design documents and is independently employed. It is also acceptable practice in the engineering community for an engineer working with a designing draftsman not to visit a particular project site if sufficient detail of the project is related to the engineer by the draftsman.
15. It is acceptable practice in the engineering community for a draftsman to design complete drawings and then present the drawings to an engineer for engineering review and approval as long as the draftsman is known to the engineer and the engineer is aware of the draftsman’s skill and expertise.
16.: Respondent has practiced his profession for 65 years, the last 25 in Florida. He has known Robert Thomas, the individual who drafted both sets of plans in question, for seven or eight, years. Respondent considers Mr. Thomas to be a “darn good” draftsman with considerable knowledge of the building industry. When Mr. Thomas brings plans to Respondent for review, they discuss the project and the plans; Respondent then makes appropriate changes to assure that the plans comply with or exceed code. This process meets the “responsible charge” standard.
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
28. Petitioner has failed to prove by clear and convincing evidence the remaining counts of the Administrative Complaint. The evidence presented indicates that Respondent exercised “responsible charge” over Robert Thomas; although Mr. Thomas actually met with his clients and drafted the plans, Respondent had ultimate control over engineering decisions after discussion of the particular project and consideration of plan alternatives. Respondent was familiar with Mr. Thomas’ qualifications.
29. There is no evidence that supports the allegation that Respondent aided or assisted Mr. Thomas in the unlicensed practice of engineering.
Given the absence of aggravating circumstances, the ALJ recommended that Kany only receive a reprimand for his negligence on the Corena Drive project.
In response to the proposed order, the parties filed their exceptions with the Florida Board of Professional Engineers. The FEMC asked the Board to accept five substantial exceptions to the ALJ’s proposed order. The essential purpose of these exceptions was to undo the ALJ’s findings in paragraphs 16 and 28 that Kany exercised “responsible charge” over the work of Robert Thomas.
The Florida Board of Engineers met to discuss the proposed order and exceptions, accepted the five exceptions requested by the FEMC, and made the decision to permanently revoke Kany’s license. All other findings of fact and conclusions of law included in the recommended order were incorporated into the final order. The decisions taken at this meeting were reflected in the final order issued by the Board on June 26, 2006.
*951 At the administrative hearing, several witnesses testified as to the proper relationship between a draftsman and the engineer of record. Syed Ashraf, a professional engineer called by FEMC to give expert testimony, agreed that the engineer of record does not need to do structural calculations or drawings and, while the engineer has to directly supervise the work of a draftsman, it is not necessary for the draftsman to be employed by the engineer’s company. In his opinion, however, the engineer has to make all design decisions from the beginning.
Professional Engineer Darius Adams [“Adams”] agreed that the employment relationship between the drafter and the engineer is irrelevant; .rather, what matters is whether the engineer is familiar with the work of the drafter and can trust the drafter’s work. When asked about whether an engineer’s ratification of plans drawn by a non-engineer could constitute “responsible charge,” Adams said:
Plans have to be presented in some form. At that point that’s when the engineer of record — -at some point he has to start looking at the plans, whether they are three lines on the drawings or a full set of drawings ... They are not completed until the engineer has reviewed them and has made his engineering directions.
Adams indicated that if a designer came to him with a set of plans, it would be appropriate for him to “review, analyze and sign and seal as an engineer,” if he knew the person. Adams also testified that it was common for engineers not to make site visits, and that it was not necessary for an engineer to make such visits if information is given to the engineer.
Kany testified that the decisions about what the plan contains are made by the drafter but then are reviewed by him and corrected or changed to “comply with code or make it better.” “Frequently, they are discussed where the nature of the plan could be changed because it’s not economical or not feasible.”
The Board primarily rests its decision that Kany violated section 471.033(1)© on its interpretation of its Rule 61G15-18.011(1), Florida Administrative Code, which we reproduce at length because we cannot find the Board’s interpretation of it in the literal language of the Rule.
(1) “Responsible Charge” shall mean that degree of control an engineer is required to maintain over engineering decisions made personally or by others over which the engineer exercises supervisory direction and control authority. The engineer in responsible charge is the Engineer of Record as defined in subsection 61G15-30.002(1), F.A.C.
(a) The degree of control necessary for the Engineer of Record shall be such that the engineer:
1. Personally makes engineering decisions or reviews and approves proposed decisions prior to their implementation, including the consideration of alternatives, whenever engineering decisions which could affect the health, safety and welfare of the public are made. In making said engineering decisions, the engineer shall be physically present or, if not physically present, be available in a reasonable period of time, through the use of communication devices, such as electronic mail, videoconferencing, teleconferencing, computer networking, or via facsimile transmission.
2. Judges the validity and applicability of recommendations prior to their incorporation into the work, including the qualifications of those making the recommendations.
(b) Engineering decisions which must be made by and are the responsibility of the Engineer of Record are those deci *952 sions concerning permanent or temporary work which could create a danger to the health, safety, and welfare of the public, such as, but not limited to, the following:
1. The selection of engineering alternatives to be investigated and,the comparison of alternatives for engineering works.
2. The selection or development of design standards or methods, and materials to be used.
3. The selection or development of techniques or methods of testing to be used in evaluating materials or completed works, either new or existing.
4. The development and control of operating and maintenance procedures.
(c) As a test to evaluate whether an engineer is the Engineer of Record, the following shall be considered:
1. The engineer shall be capable of answering questions relevant to the engineering decisions made during the engineer’s work on the project, in sufficient detail as to leave little doubt as to the engineer’s proficiency for the work performed and involvement in said work. It is not necessary to defend decisions as in an adversary situation, but only to demonstrate that the engineer in responsible charge made them and possessed sufficient knowledge of the project to make them. Examples of questions to be answered by the engineer could relate to criteria for design, applicable codes and standards, methods of analysis, selection of materials and systems, economics of alternate solutions, and environmental considerations.
* * * ⅜ * *
2. The engineer shall be completely in charge of, and satisfied with, the engineering aspects of the project.
3. The engineer shall have the ability to review design work at any time during the development of the project and shall be available to exercise judgment in reviewing these documents.
4. The engineer shall have personal knowledge of the technical abilities of the technical personnel doing the work and be satisfied that these capabilities are sufficient for the performance of the work.
Fla. Admin. Code R. 61G15-18.011(1). In its final order, the Board rejected the hearing officer’s interpretation of Rule 61G15-18.01K1), and said:
Rule 61G15-18.011(l)(a) requires an engineer in responsible charge must initiate concepts; weigh and investigate alternatives; select development, design standards and methods and the materials to be used. There is no evidence in the record that Respondent ever had an opportunity to undertake those engineering tasks because he was presented with a set of drawings to be checked and stamped. This legal conclusion is more reasonable that the legal conclusion set forth in paragraph 28 of the Recommended Order.
The Board apparently finds somewhere in this language what is not expressly stated — that any engineer who seals plans containing a design that he did not initiate is guilty of misconduct. Unfortunately, in its brief on appeal, the Board never explains where in the Rule it finds its interpretation, other than a general reference to the definition of “responsible charge” found in subsection (1). If the Board concludes that these duties they advance in this appeal are important to the profession, they should draft a rule that clearly defines and explains these duties, so that engineers will know what is expected of them and what conduct is subject to discipline.
*953 It bears repeating that: “It is the hearing officer’s function to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence.” Heifetz v. Dep’t of Bus. Reg., 475 So.2d 1277, 1281 (Fla. 1st DCA 1985). “While an agency may reject conclusions of law without limitation, neither an administrative agency nor a reviewing court may reject an administrative hearing officer’s findings of fact, as long as those findings are supported by competent, substantial evidence in the record.” Shells v. Florida Eng’rs Mgmt. Corp., 886 So.2d 426 (Fla. 4th DCA 2004)(citing Szniatkiewicz v. Unemployment Appeals Comm’n, 864 So.2d 498, 502 (Fla. 4th DCA 2004)).
Whether the engineer in any case made the engineering decisions contained in the sealed plan is a question of fact. The FEMC had the burden of proving their charge against Kany by clear and convincing evidence. See Department of Banking and Fin. v. Osborne Stern & Co., 670 So.2d 932 (Fla.1996). Under the “clear and convincing” standard “[t]he evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy.” In re Davey, 645 So.2d 398, 404 (Fla.1994).
Although it is generally held that an agency has wide discretion in interpreting a statute it administers, this discretion is somewhat more limited where the statute being interpreted authorizes sanctions or penalties against a person’s professional license. Statutes providing for the revocation or suspension of a license to practice are deemed penal in nature and must be strictly construed, with any ambiguity interpreted in favor of the licensee. Elma-riah v. Dep’t of Prof'l Reg., 574 So.2d 164, 165 (Fla. 1st DCA 1990).
The Board concedes that the ultimate question in this case is factual — were the engineering decisions made by Kany, or not? In arriving at its final order, which is completely contrary to the recommended order of the ALJ on the “responsible supervision, direction or control” issue, the Board has engaged in gymnastic parsing and dissection of the ALJ’s findings of fact. At bottom, however, their position is that, as a matter of law, the ALJ could not make what they consider to be the indispensable finding that, from the outset, Kany initiated the engineering concepts, decided what would be put into the plan and participated in the preparation of the plans.
No matter how carefully we pore over the Board’s Rule 61G15 — 18.011(1), we cannot find the twin requirements of initiation and drafting to be inherent in the Rule’s language. Indeed, subsection (1), defining “responsible charge” includes: “that degree of control an engineer is required to maintain over engineering decisions made personally or by others over which the engineer exercises supervisory direction and control authority.” Subsection (a) also says: “the degree of control necessary for the engineer of record shall be such that the engineer: (1) personally makes engineering decisions or reviews and approves proposed decisions prior to their implementation.... ” (Emphasis supplied). In fact, the language of the Rule appears to lean in the opposite direction, toward the engineer’s responsibility for what goes into the final plan because the final plan is the one that will be built from and thus will have the potential to pose a danger to the public. Whether the engineer exercised control over the decisions that went into creating initial or intermediate drafts of plans matters less under the Rule be *954 cause those plans will not be built from. Nothing express in section 471.033(l)(a) or in Rule 61G15-18.01K1) precludes an engineer from exercising the requisite supervisory direction or control authority over engineering drawings prepared by others. If the engineer merely takes a fee to “stamp plans,” i.e. affix his seal without verifying that the engineering is correct, he is in violation and this practice is properly condemned.
Recently, in Puig v. Florida Engineers Management Corp., 939 So.2d 1146, 1147 (Fla. 3d DCA 2006), the Third District considered a case quite similar to the one presented here. Jose Puig, a licensed engineer, sealed plans to two projects that an unlicensed person had contracted to undertake. Id. As in this case, the FEMC charged Puig with violating “sections 471.033(l)(a) & (j) and 455.227(l)(a) & (j), Florida Statutes (2004), which prohibits sealing plans not prepared by, or under the supervision of, the engineer and assisting an unlicensed person in the practice of engineering.” Id.
At the evidentiary hearing, Puig affirmed that he reviewed the work done prior to his involvement, directed and instructed the unlicensed person and his employees in drafting work, and oversaw completion of the design work before finally affixing his signature and seal to the plans. The ALJ concluded that Puig established through his testimony that the plans he had signed and sealed were prepared under his “responsible supervision, direction, and control.” Id.
As in Puig, we conclude that there was evidence presented from which the ALJ could have arrived at the findings and conclusions contained in his recommended order, and that it was error to reject those findings and conclusions. We reverse and remand with instructions that the administrative law judge’s recommended order be approved.
REVERSED and REMANDED.
PALMER and EVANDER, JJ., concur.

. Section 471.033, Florida Statutes (2006), provides:
Affixing or permitting to be affixed his or her seal, name, or digital signature to any final drawings, specifications, plans, reports, or documents that were not prepared by him or her or under his or her responsible supervision, direction, or control. ...
(Emphasis added). The Board refers to this as "plan stamping.”

. Kany first registered as a Professional Engineer in Indiana in 1940. He has been working as a Professional Engineer in Florida for about twenty-five years.

. The FEMC provides administrative, investigative, and prosecutorial services to the Board of Professional Engineers. The Board of Professional Engineers regulates the practice of engineering in Florida.